IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RUBEN JAMES CARTER | § | |
| TDCJ-CID NO.1136442, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-229 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| Respondent. | § | |

<u>OPINION ON DISMISSAL</u>

Petitioner Ruben James Carter, an inmate incarcerated in the Texas Department of Criminal

Justice – Correctional Institutions Division ("TDCJ-CID"), has filed two petitions for a writ of

habeas corpus under 28 U.S.C. § 2254 challenging his 2002 state court felony convictions for

possession of codeine and possession of cocaine with intent to deliver.  (Docket Entry No.1).

Respondent has filed a motion for summary judgment (Docket Entry No.10), to which petitioner

has filed a response.  (Docket Entry No.12).  For the reasons to follow, the Court will grant

respondent's motion for summary judgment and deny petitioner relief.

I.    <u>FACTUAL AND PROCEDURAL HISTORY</u>

A grand jury charged petitioner by indictment with possession of a controlled substance,

namely cocaine, with intent to deliver in cause number 903440 and with possession of a controlled

substance, namely codeine, in cause number 915660.  (Docket Entry No.1).  Petitioner entered a

plea of not guilty to both offenses.  (*Id.*).  A jury in the 182nd Criminal District Court of Harris

County, Texas, heard the following evidence as summarized by the Sixth Court of Appeals for the

State of Texas ("Sixth Court of Appeals"):

> On February 21, 2002, around 10:00 a.m., Mergim Meraia, an officer with the
> Houston Police Department (HPD), observed a red Toyota Corolla being driven by
> a person whom he suspected of being a fugitive from justice.  Meraia followed the
> Corolla and activated his police lights.  The suspect ran a stop sign and eventually

pulled into a driveway located at 13213 Chiswick. Meraia and the suspect exited their respective vehicles. The suspect approached Meraia and, when the suspect was approximately eight feet away from him, Meraia pulled his weapon and told him to stop. The suspect then held up his hands and backed away from Meraia. The suspect asked Meraia, "[M]an, what's up, man, what's up?" After three or four seconds, the suspect fled the scene. Meraia pursued, but failed to apprehend him. Meraia testified the suspect was wearing a black "do-rag" on his head, a red shirt, and blue jean shorts.

The homeowner in whose driveway the Corolla was left and unidentified witnesses at the scene identified the driver of the Corolla as a person called "Little J." An inventory of the Corolla yielded an insurance document issued to a person named "Lenit Chambers" and a bill of sale which identified the Corolla's owner as "Latahia Gulley." Vernon English, an HPD officer who was assisting Meraia, discovered a two-liter Mountain Dew Code Red bottle on the passenger seat. English testified codeine syrup is commonly mixed with Mountain Dew Code Red because the red color of the soda blends with the color of the codeine syrup. English testified he identified the smell of codeine syrup mixed with soda in the bottle. English also discovered a small plastic bag containing what appeared to be crack cocaine on the driver's side floorboard, near the gas pedal. No attempt to lift fingerprints from the automobile or narcotics containers was made. Connie Dieringer, a chemist with the HPD, testified that the small plastic bag contained approximately twenty-four grams of cocaine and that the bottle contained approximately 491.1 grams of codeine, including adulterants and dilutants, in the concentration of 11.1 milligrams of codeine per 100 milliliters.

Chambers testified at trial that, at the time of the incident, she owned the Corolla and carried insurance on the vehicle. Meraia testified Chambers had originally told him February 21 the car had been stolen. Meraia testified Chambers changed her story during a telephone conversation February 26. Meraia testified that Chambers told him Carter had been driving the car and that he admitted to her he had run from the police. Chambers testified at trial, however, that the car had been stolen. Chambers also denied ever telling Meraia that Carter had been driving the car or admitted to fleeing.

Meraia testified that, on February 22, the day after the incident, he and other officers returned to the area where the Corolla had been abandoned, where they encountered a person of similar build and description as the suspect. When this person saw the officers, he fled along the same route taken by the suspect on the previous day. Meraia apprehended and arrested this person. Meraia testified he did not remember this person's name and did not ask if his nickname was "Little J." Meraia further testified this person did not resemble Carter and was not the individual for whom they were looking.

Michael Edwards, the owner of the house where the Corolla had been abandoned, testified he did not see who drove the automobile. Edwards testified that "Little J" is a seventeen-year-old boy who lives on the same street as he. Edwards testified

that he knows Carter and that he has never seen Carter drive the Corolla.  Edwards further testified that Carter has never gone by the nickname "Little J" and that Carter's nickname is "Black."  Edwards testified that, two days after the incident, he took Meraia to Little J's home.

Lawrence Campbell, Carter's uncle, testified Carter had borrowed his car, a maroon 1988 Pontiac Grand Am, February 21 around 9:15-9:30 a.m. Campbell's home is approximately twenty to twenty-five minutes from where the Corolla was abandoned. Campbell also testified Carter was wearing a black shirt, blue jean pants, and black tennis shoes that morning and was still wearing them when he returned the car that evening.

*Carter v. State*, No.06-02-00178-CR, 2003 WL 22227630 (Tex. App.–Texarkana 2003, pet. ref'd) (not designated for publication).  The jury found petitioner guilty of both offenses and the state district court assessed punishment at twenty years confinement on each conviction.  (Docket Entry No.1).

On direct appeal, petitioner challenged his convictions on the grounds that the evidence was legally and factually insufficient to establish his identity and to establish possession, and that he was denied the effective assistance of counsel.  *Carter v. State*, No.06-02-00179-CR, 2003 WL 22228296 (Tex. App.–Texarkana 2003, pet. ref'd) (not designated for publication) (codeine); *Carter v. State*, No.06-02-00178-CR, 2003 WL 22227630 (Tex. App.–Texarkana 2003, pet. ref'd) (not designated for publication) (cocaine).  On September 29, 2003, the Sixth Court of Appeals affirmed both convictions, noting that "[b]oth convictions occurred in the same proceeding and were based on the same incident."  *Id.*  On March 3, 2004, the Texas Court of Criminal Appeals refused petitioner's petitions for discretionary review.  *Id.*

On January 10, 2005, petitioner filed in each cause a state application for writ of habeas corpus in the state district court.  (Docket Entry No.1).  On April 27, 2005, the Texas Court of Criminal Appeals dismissed each application on petitioner's motion for a voluntary dismissal.

Texas Court of Criminal Appeals website.[1]  On May 19, 2005, petitioner filed a second set of state

habeas applications.  (Docket Entry No.1).  He filed identical applications on each conviction,

collaterally attacking the same on the following grounds:

1.    He was denied due process because the State failed to disclose material
exculpatory evidence;

2.    The prosecution engaged in misconduct by presenting false testimony about
the documents and contraband found in the vehicle;

3.    He was denied the right to confront Officer Randall, who allegedly found
and recovered the crack cocaine;

4.    He was denied the effective assistance of counsel because trial counsel did
not object to hearsay testimony, the drug chemist's testimony, and the
prosecution's closing argument.  Trial counsel also failed to request a jury
instruction of misidentification and to impeach Officer English's false
testimony about the recovery of the crack cocaine;,

5.    He was denied the effective assistance of counsel on appeal; and,

6.    He was denied due process of law upon the admission of identification
testimony based on a tainted out-of-court procedure.

*Ex parte Carter*, Application No. 61,808-04 (cocaine); *Ex parte Carter*, Application No.61,808-03

(codeine).  On November 23, 2005, the Texas Court of Criminal Appeals denied each application

without written order on the findings of the trial court without a hearing.  *Id.* at covers; Texas Court

of Criminal Appeals website.[2]

Petitioner executed the pending federal petitions for a writ of habeas corpus with this Court

on January 1, 2006.[3]  Therefore, petitioner's petition is subject to the provisions of the Antiterrorism

---

1      www.cca.courts.state.tx.us/opinions/EventInfo.asp?EventID=2295385;
www.cca.courts.state.tx.us/opinions/EventInfo.asp?EventID=2195386

2      www.cca.courts.state.tx.us/opinions/EventInfo.asp?EventID=2218886;
www.cca.courts.state.tx.us/opinions/EventInfo.asp?EventID=2218887

3      For statute of limitations purposes, the Court treats the date a *pro se* prisoner deposits a
federal petition in the mail as the filing date.  *Fisher v. Johnson*, 174 F.3d 710, 712 n.8 (5th Cir. 1999) (citing
*Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (per curiam)).  Petitioner indicates that he filed these

and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).

*Lindh v. Murphy*, 521 U.S. 320 (1997).  Petitioner seeks federal habeas relief on the following grounds in both petitions:

> 1.      The State failed to disclose evidence in violation of *Brady v. Maryland*;
>
> 2.      The prosecutor engaged in misconduct by his knowing use of false and perjured testimony upon which petitioner was convicted; and,
>
> 3.      Petitioner was denied the effective assistance of counsel at trial and on appeal.

(Docket Entries No.1, No.2).

Respondent moves for summary judgment[4] on the following grounds:

> 1.      Petitioner's habeas petitions are time-barred and he is not entitled to equitable tolling; and,
>
> 2.      Petitioner has failed to meet his burden of proof under § 2254(d) of the AEDPA.

(Docket Entry No.10).

II.     SUMMARY JUDGMENT

In deciding a motion for summary judgment, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party bears the initial burden of informing the court of the basis of the motion and identifying the portions of the record

---

petitions on January 1, 2006.  Therefore, the Court will treat the date the petition was signed as the filing date in this case.

    4  Respondent addresses only one conviction in cause number 915660, but mis-states the offense as possession of a controlled substance, codeine, with intent to deliver.  (Docket Entry No.10).  Because both convictions stem from the same course of events, and petitioner has challenged both convictions on the same grounds in state court and in this Court, the Court will consider both convictions in the pending Order.

demonstrating the absence of a genuine issue for trial. *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001); *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

A.      <u>28 U.S.C. § 2244(d)</u>

Respondent maintains that the pending petition is time-barred and therefore, subject to dismissal. (Docket Entry No.10).

Under AEDPA, habeas corpus petitions are subject to a one-year limitations period found in 28 U.S.C. § 2244(d), which provides as follows:

> (d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --
>
>    (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>    (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>    (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>    (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2)     The time during which a properly filed application for State post-conviction or other collateral review with respect to the

> pertinent judgment or claim is pending shall not be counted toward
> any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)–(2). The one-year limitations period became effective on April 24, 1996, and applies to all federal habeas corpus petitions filed on or after that date. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh*, 521 U.S. 320). Because petitioner's federal petition was filed well after that date, the one-year limitations period applies to his claims. *Flanagan*, 154 F.3d at 198.

Respondent argues that petitioner's first state habeas applications did not toll the limitations period because they were voluntarily dismissed. Citing *Ford v. Sharp,* 758 F.2d 1018, 1023-24 (5th Cir. 1985), respondent argues that a voluntary dismissal of a state habeas application without prejudice places the petitioner in the same position that he would have been if the suit had never been filed. (Docket Entry No.10). He contends that petitioner's second state habeas applications tolled only the thirteen days that he had remaining on the federal statute of limitations. (*Id.*). Respondent further contends that petitioner's limitation period expired on December 6, 2005; therefore, the pending petition, filed on January 1, 2006, was untimely filed. (*Id.*).

A federal habeas suit is a civil proceeding. *Fisher v. Baker*, 203 U.S. 174, 181 (1906). A civil suit arising from a federal statutory cause of action that is dismissed by a federal court without prejudice is generally treated as if it had never been filed. *Hawkins v. McHugh*, 46 F.3d 10, 12 (5th Cir. 1995) (discussing rule in § 1983 claim); *see also Graham v. Johnson*, 168 F.3d 762, 776 n. 12 (5th Cir. 1999) (explaining rule in habeas context). Unlike *Ford* and *Hawkins*, in which a federal court dismissed the suit, a state court dismissed petitioner's state habeas application.

A state habeas application is a criminal proceeding. Unlike civil proceedings in Texas, petitioner's state habeas application is subject to the procedural requirements of Article 11.07 of the Texas Code of Criminal Procedure and Rule 31 of the Texas Rules of Appellate Procedure. *See*

TEX. CODE CRIM. PROC. ANN. art. 11.07 (Vernon 2005) (delineating procedure for filing application of writ of habeas corpus after conviction without death penalty); TEX. R. APP. PROC. R. 31 (providing rules for appeals of habeas corpus in criminal cases).  Respondent does not direct the Court to any state law, and the Court has not located any, which holds that a voluntary dismissal of a state habeas application without prejudice places the petitioner in the same position that he would have been if the application had never been filed.

Moreover, a voluntary dismissal of a state habeas application does not bar the tolling of the one-year limitations period because § 2244(d)(2) does not condition tolling of the limitations period on the disposition of a claim or judgment in state court.  *See Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999) (discussing reluctance "to engraft a merit requirement into § 2244(d)(2) without some indication of congressional intent to do so").  Instead, § 2244(d)(2) permits tolling of the limitations period for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  § 2244(d)(2). An application is properly filed under § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings."  *Artuz v. Bennett*, 531 U.S. 4, 8 (2000); *see also Villegas*, 184 F.3d at 470 (holding properly filed application is "one that conforms with a state's applicable procedural filing requirements").  Under these circumstances, petitioner's state habeas applications were properly filed.

Under the provisions of the AEDPA, petitioner's one-year limitation period began on June 1, 2004, the last day petitioner could have filed a petition for writ of *certiorari* in the United States Supreme Court.  SUP. CT. R. 13.1; 28 U.S.C. § 2244(d)(1)(A).  That date triggered the one-year limitations period which expired on June 1, 2005.  Petitioner's first state habeas applications were pending in the Texas Court of Criminal Appeals from January 10, 2005 until April 27, 2005, thus tolling the limitations period for 107 days.  Petitioner's second state habeas petitions were pending

from May 19, 2005 until November 23, 2005, thus tolling the limitations period 188 days.  Although petitioner's federal habeas petitions were filed beyond the June 1, 2005 deadline, the pendency of his state habeas applications tolled the limitations period until March 22, 2006.  Because petitioner filed his federal habeas petitions on January 1, 2006, well within the tolling period, the pending petitions are timely filed under § 2244(d)(2).

B.      28 U.S.C. § 2254(d)

Respondent also moves for summary judgment on the ground that petitioner has not met his burden of proof under the AEDPA.

The AEDPA, codified as amended at 28 U.S.C. § 2254(d), "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).  Specifically, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Under the AEDPA, the petitioner retains the burden to prove that he is entitled to habeas corpus relief. *Williams v. Taylor*, 529 U.S. 362 (2000).  In this case, petitioner presented claims in petitions for discretionary review, which the Texas Court of Criminal Appeals refused, and in state habeas corpus applications, which the Texas Court of Criminal Appeals denied without written order on the findings of the trial court without a hearing.  As a matter of law, a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of a claim. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)).  Therefore, only those claims properly raised by petitioner in his petitions for

discretionary review and his state habeas applications have been adjudicated on the merits by the state courts.

Where a petitioner's claim has been adjudicated on the merits, section 2254(d) holds that this Court shall not grant relief unless the state court's adjudication:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1),(2); *Williams*, 529 U.S. at 411-13; *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Courts are to review pure questions of law and mixed questions of law and fact under subsection (d)(1), and pure questions of fact under subsection (d)(2). *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).

"The standard is one of objective reasonableness." *Montoya*, 226 F.3d at 403-04 (quoting *Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring)). Under this standard, a federal court's review is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (citing *Cruz v. Miller*, 255 F.3d 77, 86 (2nd Cir. 2001) (noting that even where a state court makes a mistake in its analysis, "we are determining the reasonableness of the state court's 'decision,' . . . not grading their papers").

A decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle. . . but unreasonably applies that principle to

the facts of the prisoner's case." *Id.* To be unreasonable, the state decision must be more than merely incorrect. *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). A reversal is not required unless "the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'" *Id.* Factual findings made by the state court in deciding a petitioner's claims are presumed correct, unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

While Rule 56 of the Federal Rules regarding summary judgment applies generally "with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), it applies only to the extent that it does not conflict with the habeas rules. *Smith*, 311 F.3d at 668 (citing Rule 11 of the Rules Governing Section 554 Cases in District Courts). Therefore, section 2254 (e)(1), which mandates that findings of fact made by a state court are presumed correct, overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the non-moving party. *Id.* Unless the petitioner can "rebut[] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct. *Id.*

Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519 (1972); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999). Thus, *pro se* pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Haines*, 404 U.S. at 521. Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

1.      Disclosure of Exculpatory Evidence

Petitioner contends that he was denied due process of law because the State failed to disclose the documents found in the abandoned Toyota Corolla ("Corolla") by the investigating officers, *i.e.*, a certificate of insurance and a bill of sale, by which officers linked petitioner to the crime.  (Docket Entries No.1, No.2).  Petitioner claims had the State disclosed the documents showing L. Chambers as the owner of the Corolla, his trial counsel could have impeached Meraia's testimony about the car being registered to L. Gulley and how Officer Sutton used the documents to retrieve petitioner's address, criminal history, and photograph.  (*Id.*).  Petitioner maintains that without the documents, the State could not explain how petitioner was linked to the crime.  (*Id.*).

Due process is violated when the prosecution, after a request, suppresses evidence favorable to the accused that is material to either guilt or punishment, regardless of the good or bad faith of the prosecution.  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  *Brady* applies to the discovery of "information which had been known to the prosecution but unknown to the defense."  *West v. Johnson*, 92 F.3d 1385, 1399 (5th Cir. 1996).  "Evidence is not 'suppressed' if the defendant either knew, or should have known of the essential facts permitting him to take advantage of any exculpatory evidence."  *Rector v. Johnson*, 120 F.3d 551, 560 (5th Cir. 1998) (quoting *West,* 92 F.3d at 1399).  The State is not required to furnish information that is fully available to the defendant or that could be obtained through reasonable diligence.  *Blackmon v. Scott*, 22 F.3d 560, 564-65 (5th Cir. 1994).

The state habeas court found that petitioner failed "to allege sufficient facts which, if true, would demonstrate that the State withheld exculpatory evidence in the primary case."  *Ex parte Carter*, Application No.61,808-04 at 123; Application No.61,808-03 at 124.  The Texas Court of Criminal Appeals denied relief on these findings without written order.  *Id.* at covers.

The record supports the state habeas court's findings.[5]  First, the record shows that the prosecution did not possess the documents, which named Chambers as the insured and Gulley as the owner of the Corolla.  Both officers testified that the papers were left at the scene.  *Carter v. State*, No.6-02-00178-CR; No.6-02-00179-CR, Reporter's Record, Volume 4, pages 71-72.  Second, the record does not show that documents were favorable to the defense.  Petitioner's trial counsel chose not to elicit testimony about how names found on the documents were utilized to link petitioner to the crime.  *Id.*, page 128.  Regardless of whether the contents of the documents were correct or whether the officers' testimonies about the contents of the documents were correct, the record shows that Gulley's and Chambers's names were found on documents in the Corolla.  Third, petitioner does not show how the result of the proceeding would have been different had these documents been produced, especially in light of Meraia's testimony that Chambers told him that petitioner had been driving her car and that he had admitted to her that he had abandoned the car when he ran from police.  *Id.*, Volume 5, pages 129-130.

---

[5]   The record shows that City of Houston Police Officer Mergim Meraia testified that during an inventory search of the Corolla, police officers found insurance documents listed to Lenit Chambers and other documents showing that the car had been sold to Latashia Gulley.  *Carter v. State*, No.6-02-00178-CR; No.6-02-00179-CR, Reporter's Record, Volume 4, page 23.  On cross-examination, Meraia testified that these documents were left in the vehicle.  *Id.*, pages 71-72.  Meraia further testified that he did not check with the State of Texas to determine the identity of the true owner of the vehicle.  *Id.*, page 72.  Meraia attested that as a result of an investigation of these documents, he was shown a photograph of petitioner and identified petitioner as the person who ran from the Corolla on February 21, 2002.  *Id.*, page 27.

Officer T. W. Sutton testified that he came up with the name Latashia Gulley from the papers found in the Corolla.  *Id.*, page 122.  He indicated that he left the papers at the scene and did not take custody of the papers.  *Id.*  At the request of petitioner's trial counsel, Sutton testified outside the jury's presence about how he identified petitioner as the driver of the Corolla.  *Id.*, page 127.  Sutton testified that he ran Latashia Gulley's name through the computer system and found petitioner listed as a defendant as a suspect in a domestic violence case in December, 2001.  From there, he discovered petitioner's date of birth, driver's license, social security number, and height, weight, and physical descriptors.  *Id.*  The physical descriptors matched those Officer Meraia had given to Sutton regarding the driver of the Corolla.  *Id.*  Sutton testified that he also discovered all of petitioner's arrests, which were in the same area where the Corolla was abandoned.  *Id.*  Petitioner's trial counsel did not question Sutton about the same in the jury's presence.  *Id.*, page 128.

Accordingly, petitioner fails to show that the state habeas court's findings are contrary to, or involved an unreasonable application of clearly established federal law.

2.     <u>Prosecutorial Misconduct</u>

Petitioner contends that the prosecution engaged in misconduct by knowingly presenting Officer English's false testimony regarding the discovery and recovery of crack cocaine from the Corolla. (Docket Entries No.1, No.2). Petitioner contends that Officer Meraia attested in the probable cause affidavit, which led to the warrant for petitioner's arrest, that Officer D. Randall reported that he recovered the crack cocaine from the Corolla and Officer V. English reported that he recovered the Mountain Dew bottle, which contained codeine, from the Corolla. Petitioner complains that because English testified at trial that he recovered both the cocaine and the bottle with codeine, he made a false statement. He further complains that because the prosecutors had read the probable cause affidavit, they knew English did not find the cocaine and without his testimony, the cocaine could not be linked to the Corolla. (*Id.*).

A conviction obtained through the use of evidence known to be false by the prosecution violates the Due Process Clause of the Fourteenth Amendment to the Constitution. *Napue v. Illinois,* 360 U.S. 264, 269-270 (1959). This principle applies regardless of whether the prosecution affirmatively offered false testimony or merely permitted false testimony to go uncorrected. *Id.* To establish a violation based upon the knowing use of false testimony , a movant must show: (a) the testimony at issue was false; (b) the prosecution knew the testimony was false and nonetheless permitted it to go unchallenged; and (c) the testimony was material. *Creel v. Johnson,* 162 F.3d 385, 391 (5th Cir. 1998).

The state habeas court found that petitioner failed "to allege sufficient facts which, if true, would show that the prosecutor used perjured testimony." *Ex parte Carter*, Application No.61,808-03 at 124; No.61,808-04 at 123. The record supports the state courts' findings.

The record shows that approximately twelve officers assisted Officer Meraia at the scene, including Officers English and Randall. *Carter v. State*, No.6-02-00178-CR; No.6-02-00179-CR, Reporter's Record, Volume 4, pages 49-50, 59. Officer Vernon English and another officer were the only two officers who were in the car. *Id.*, page 86. Officers English and Randall found the illegal substances in the Corolla. *Id.*, pages 58-59. Officer English inventoried the Corolla. *Id.*, page 76. English attested when he opened the passenger door, he found a red Mountain Dew bottle on the front passenger seat. *Id.* page 77. When questioned whether other contraband was found in the car, English attested, as follows: "There was a small plastic bag containing what we think was crack cocaine near the driver's pedal on the driver's side." *Id.*, page 78. English also indicated that when he "looked in the vehicle I noticed there was the small baggie of crack cocaine near the driver's pedal." *Id.*, page 90. English further indicated that he personally recovered the contraband and took it to the narcotics lockbox. *Id.*, pages 83-84. He attested that when "we collect these kind of – this type of evidence we make note as to whoever is doing the report, who found, where we found it. And since I was the one that personally recovered it, I write my information on it, I fill out the envelope. As you can tell, my signature is at the bottom of the envelope." *Id.* State's Exhibit 1, the evidence envelope signed only by Officer English, was admitted into evidence without objection. *Id.*, Volume 8, page 3.

Petitioner's complaint that the probable cause affidavit reflects that Officer Randall found the crack cocaine does not establish that Officer English's testimony is false or perjured. Contradictory testimony merely establishes a credibility question for the jury. *Koch v. Puckett*, 907

F.2d 524, 531 (5th Cir. 1990).  Petitioner fails to show that the state habeas court's findings are contrary to, or involved an unreasonable application of clearly established federal law.

3.      Ineffective Assistance of Trial Counsel

Petitioner complains that he was denied the effective assistance of counsel at trial in violation of the Sixth Amendment because his trial counsel failed to object to hearsay testimony, to the drug chemist's testimony, and to the prosecutor's closing argument, and because counsel failed to request a jury instruction of misidentification.  (Docket Entry No.1).  The state habeas court found that petitioner failed to allege sufficient facts to show that his trial counsel rendered ineffective assistance and that the "totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of counsel in the primary case." *Ex parte Carter*, No.61,808-03 at  125; No.61,808-04 at 124.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel.  U.S. CONST. amend. VI.  A federal habeas corpus petitioner's claim that he was denied effective assistance of trial counsel is measured by the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail on an ineffective assistance of counsel claim, petitioner must establish that his counsel's performance was deficient and that the deficiency prejudiced his defense.  *Ogan v. Cockrell*, 297 F.3d 349, 360 (5th Cir. 2002). The failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.  *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

Counsel's performance is deficient when the representation falls below an objective standard of reasonableness.  *Ogan*, 297 F.3d at 360.  Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption" that "trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy." *West v.*

16

*Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1993). Mere "error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 687-90. A deficiency in counsel's performance, standing alone, does not equal ineffective assistance of counsel if no actual prejudice is demonstrated.

Counsel's deficient performance results in actual prejudice when a reasonable probability exists "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Confidence in the outcome of the trial is undermined when counsel's deficient performance renders "the result of the trial unreliable or the proceeding fundamentally unfair." *Pratt v. Cain*, 142 F.3d 226, 232 (5th Cir. 1998) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Pratt*, 142 F.3d at 232 (quoting *Lockhart*, 506 U.S. at 372).

A claim of ineffective assistance of counsel presents a mixed question of law and fact. *Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001). Because petitioner's ineffective-assistance claims were previously considered and rejected on state habeas corpus review, the state court's decision on those claims will be overturned only if it is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

a.    Failure to Object

Petitioner complains that his trial counsel failed to object to Officer Meraia's rebuttal testimony that Lenit Chambers told him that petitioner informed her that he had run from the police and had to leave the vehicle behind.  (Docket Entries No.1, No.2).  Under state evidentiary rules, testimony offered to impeach a prior inconsistent statement is admissible.  Tex. R. Evid. 613(a). Here, the prosecutor approached the bench and made the Court aware that she wanted to present testimony that would impeach prior inconsistent statements made by two witnesses.  The Court informed the prosecutor that "[a]ccording to my notes, you should be able to ask this officer about Lenit Chambers stated [sic] that Ruben had been driving her car or that she stated that Ruben had said that he run [sic] from the cops and left her car behind."  *Carter v. State*, No.6-02-00178-CR; No.6-02-00179-CR, Volume 5, page 126.  Given the admissibility of such evidence and the Court's comments, any objection to such testimony would have been futile.  Trial counsel's conduct is not deficient for failure to make a futile objection or motion.  *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998).

Next, petitioner complains that his trial counsel's conduct was deficient because she failed to object to the testimony of the drug chemist on the ground that the gas chromatograph/mass spectrometry test the chemist utilized to determine the presence of cocaine and codeine is unreliable.  (Docket Entry No.2).  The record reflects that the drug chemist testified that four tests, including the  gas chromatograph/mass spectrometry test, indicated the presence of cocaine in the substance found in the Corolla.  *Carter v. State*, No.6-02-00178-CR; No.6-02-00170-CR, Reporter's Record, Volume 5, pages 6-9.  On cross-examination, petitioner's trial counsel questioned the chemist as to whether any of the tests revealed who possessed or made the illegal substances.  *Id.*, page 16.

Based on this record, the Court presumes that trial counsel made a reasonable strategic decision not to object to the reliability of the gas chromatograph/mass spectrometry test because the chemist testified that the substances were thoroughly tested.  Instead, she focused on whether such tests could link petitioner to the contraband.  *See Hardamon v. United States*, 319 F.3d 943, 949 (7th Cir. 2003) (noting "[a] competent trial strategy is to mitigate damages evidence by allowing it to come in without drawing additional attention to it, such as an objection would").

Petitioner also complains that his trial counsel failed to object to the prosecutor's improper closing argument.  (Docket Entries No.1, No.2).  Specifically, petitioner complains that his trial counsel did not voice an objection to the prosecutor's statement that "[w]hen someone speaks it makes it easier to remember their face."  (*Id.*).  Petitioner contends such statement is outside the summation of the evidence.  (*Id.*).

Texas law permits four areas of permissible jury argument: (1) summation of the evidence; (2) reasonable inferences or deductions from the evidence; (3) responses to opposing counsel's argument; and (4) pleas for law enforcement.  *Wilson v. State*, 938 S.W.2d 57, 59 (Tex. Crim. App. 1996).  Respondent does not argue that the prosecutor's statement was proper.[6]  Even if the statement was improper, trial counsel's failure to object does not reflect deficient performance.  "A decision not to object during a closing argument is a matter of trial strategy."  *Drew v. Collins*, 964 F.2d 411, 423 (5th Cir. 1992); *accord Wiley v. Puckett*, 969 F.2d 86, 102 (5th Cir. 1992) (noting defense attorney "could reasonably have decided not to risk antagonizing the jury by objecting, or he could have decided that his best strategy was to let his own closing argument (recited before the

---

[6]  Arguably, the prosecutor may have been responding to trial counsel's closing argument, in which she stated the following: "When they [Meraia and the offender] were eight feet apart there was a discussion between them, lasted a couple of seconds at the most.  Officer Meraia said it lasted two, three seconds, I believe it might have been four seconds, lasted a couple of seconds then the fugitive turns and runs.  He is not caught that day.  That's the last they see of him that day, but Officer Meraia was able to give you a description of that person."  *Carter v. State*, No.6-02-00178-CR, No.6-02-00179-CR, Reporter's Record, Volume 6, pages 19-20.

State's) speak for itself").  Whatever the reason trial counsel chose not to object, such conduct does not constitute ineffective assistance.

b.      Failure to Request Jury Instruction

Petitioner maintains that his trial counsel was ineffective because she failed to request a jury instruction pursuant to article 38.23 of the Texas Code of Criminal Procedure regarding the issue of identity.  (Docket Entries No.1, No.2).  Article 38.23 provides that no evidence obtained by an officer or other person in violation of the constitution or laws of Texas or the United States shall be admitted against an accused in a criminal trial.  Where the legal evidence raises an issue, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was so obtained, the jury shall disregard any such evidence so obtained.  TEX. CRIM. PROC. ANN. art. 38.23(a) (Vernon 2005).

Petitioner complains that Meraia, the only eyewitness to the incident, identified petitioner as the suspect driving the Corolla from a single photograph shown to him before trial and that such procedure was overly suggestive and prejudicial.  Petitioner further complains that Meraia's in-court identification testimony was tainted by the unfair out-of-court procedure.  For this reason, petitioner contends an article 38.23 jury instruction was required.  (Docket Entry No.2).  A jury instruction pursuant to Article 38.23, however, applies to illegally obtained evidence and not in-court identification.  *Allen v. State*, 511 S.W.2d 53, 54 (Tex. Crim. App. 1974).  Petitioner's trial counsel was not deficient in failing to request such an instruction as to an allegedly impermissible pre-trial photograph because the state district court would have denied such an instruction.

4.      Ineffective Assistance of Appellate Counsel

Petitioner next contends his appellate counsel rendered constitutionally ineffective assistance because he failed to raise on direct appeal a due process challenge to the admission of Meraia's in-

court identification testimony.  Petitioner contends Meraia's out-of-court identification was tainted by an unfair out-of-court procedure, *i.e.*, the single photograph that Officer Sutton showed Meraia, from which Meraia identified petitioner as the driver of the Corolla.  (Docket Entries No.1, No.2).

Respondent maintains this claim fails as a matter of law because petitioner does not show that his appellate attorney failed to identify or raise a non-frivolous claim.  (Docket Entry 10).

An accused is constitutionally entitled to effective assistance of counsel on direct appeal as a matter of right.  *Evitts v. Lucey*, 469 U.S. 387 (1985).  Claims of ineffective assistance of counsel are determined by the same standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Smith v. Murray*, 477 U.S. 527 (1986).  To establish that appellate counsel's performance was deficient in the context of an appeal, petitioner must first show that his attorney was objectively unreasonable in failing to find arguable issues to appeal, *i.e.*, counsel unreasonably failed to discover non-frivolous issues and raise them.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  Petitioner must then demonstrate that he was actually prejudiced by his counsel's errors.  *Id.* at 285-286; *see also Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000).  To establish actual prejudice, petitioner must show a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on appeal."  *Robbins*, 528 U.S. at 285.

"The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal."  *Ellis v Lynaugh* 873 F.2d 830, 840 (5th Cir. 1989).  Thus, counsel is not ineffective merely because he fails to raise issues requested by the defendant.  *Sharp v. Puckett*, 930 F.2d 450, 452 (5th Cir. 1991).  In fact, appointed counsel prosecuting an appeal on an adequate trial record is not constitutionally required to confer with the defendant about legal issues to be presented on appeal.  *Hooks v. Roberts*, 480 F.2d 1196, 1197-98 (5th Cir. 1973).  Further, counsel is not ineffective for "failing to raise every possible point on appeal."  *Sharp*, 930 F.2d at 452.  Appellate counsel is obligated only to raise and brief those issues that are believed to have the best

chance of success.  *Jones v. Barnes*, 463 U.S. 745, 751-53 (1983).  Where an allegation of ineffective assistance of appellate counsel is based on counsel's failure to advance certain issues on appeal, courts have refused to find counsel ineffective when the proposed issues are without merit.  *Williams v. Collins*, 16 F.3d 626, 635 (5th Cir. 1994).  In short, appellate counsel need not advance every argument, regardless of merit, urged by the appellant.  *Evitts v. Lucey*, 469 U.S. 387, 394 (1985).

The state district court found that petitioner failed to allege sufficient facts to show that his appellate counsel's conduct was deficient or prejudicial.  The state court further found that the totality of representation afforded petitioner was sufficient to protect his rights.  *Ex parte Carter*, No.61,808-03, page 125; No.61,808-04, page 124.  The record supports the state district court's findings.

The record shows that petitioner's appellate counsel challenged the sufficiency of the evidence to support petitioner's conviction on the ground that the State failed to establish petitioner's identity as a matter of law.  *Carter v. State*, Petition for Discretionary Review No.1843-03, No.1843-04.  Appellate counsel argued that the evidence was insufficient because the conviction was supported by a three-to-four second viewing by a witness "that was twice mistaken as to the identity of the driver."  *Id.*  Appellate counsel did not challenge evidence of petitioner's identity on the ground that the out-of-court procedure was tainted, perhaps because petitioner did not preserve such ground for appellate review.  *See Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (to preserve error for appellate review, the complaining party must make a timely, specific objection and obtain a ruling on the objection); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995)

(same).  Petitioner's trial counsel did not voice an objection to the allegedly tainted photo identification.[7]

Moreover, the record does not support petitioner's allegation that "Meraia only identified Petitioner as the accused by the showing of a single photograph."  (Docket Entry No.2, page 27). Officer Meraia testified that he got a good look at petitioner's face for three to four seconds when petitioner exited the Corolla and walked within eight feet of him.  *Carter v. State*, No.6-02-00178-CR, No.6-02-00179-CR, Volume 4, pages 15, 17.  Meraia indicated that he had good vision and that he saw petitioner around mid-morning on a sunny day.  *Id.* page 18.  He identified petitioner in court as the person who jumped out of the car.  *Id.*  Meraia further testified to the clothing, skin tone, height, weight, and age of the suspect that he saw fleeing the Corolla.  *Id.* pages 45-47.  He attested that he had been trained as a police officer to observe people and to make a good description.  *Id.* page 46.  He further attested that there was no doubt in his mind that petitioner was the man who got out of the Corolla and walked toward him.  *Id.* at 68.  Meraia indicated that he based his identification of petitioner as the suspect in the Corollas from the few seconds that he saw petitioner face-to-face and from the follow-up investigation information.[8]  *Id.*, pages, 68, 71; Volume 5, page 131.

---

[7]  Instead, to prevent the jury from hearing evidence of petitioner's criminal history, petitioner's trial counsel examined Officer Sutton outside the jury's presence about how he obtained petitioner's name and personal information, including his driver's license. *Carter v. State*, No.6-02-00178-CR, No.6-02-00179-CR, Volume 4, pages 126-128.  Meraia testified without objection that police officers were able to obtain a photograph of petitioner and that he was shown the photograph. *Id.* page 27.  He identified petitioner as the same person who ran from the car on February 21, 2002.  *Id.*

[8]  Testimony of the follow-up investigation was given by Officer Sutton.  *Id.*, Volume 5, page 121. Sutton testified that Meraia gave him a description of the suspect driving the Corolla and the descriptors, particularly the height, weight, and age matched with petitioner.  *Id.*, page 123.  Outside the jury's presence, Sutton testified that he found petitioner's name, date of birth, driver's license, social security number, and physical descriptors in the computer system and the descriptors matched the build, height and weight of the suspect that Meraia had given him.  *Id.*

Based on the foregoing, the Court finds that petitioner has failed to show that his appellate counsel's conduct was deficient because he failed to raise an un-preserved and unsupported error on direct appeal.  Accordingly, petitioner fails to show that the state court's findings were an unreasonable application of federal law.

III.   CERTIFICATE OF APPEALABILITY

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted).  Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001).  On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling."  *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).  A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  The Court has determined that petitioner has not made a substantial showing that his constitutional rights have been violated; therefore, a certificate of appealability from this decision will not issue.

IV.    <u>CONCLUSION</u>

Accordingly, the Court ORDERS the following:

1.      Respondent's motion to withdraw Assistant Attorney General Abigal L. Rushing and to substitute Assistant Attorney General Carole S. Callaghan as attorney-in-charge for respondent (Docket Entry No.12) is GRANTED.

2       Respondent's motion for summary judgment (Docket Entry No.10) is GRANTED.

3.      Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2254 is DENIED.

4.      This cause of action is DISMISSED with prejudice.

5.      A certificate of appealability is DENIED.

6.      All other pending motions, if any, are DENIED.

The Clerk shall provide a copy of this Order to the parties.

Signed at Houston, Texas, on this 30th day of March, 2007.


MELINDA HARMON
UNITED STATES DISTRICT JUDGE